[Cite as *Freeman v. Turoczy Bonding Co., Inc.*, 2022-Ohio-937.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES FREEMAN,                          :

    Plaintiff-Appellant,          :

                                    No. 110805

    v.                            :

TUROCZY BONDING CO., INC., ET AL., :

    Defendants-Appellees.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 24, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-916741

---

### *Appearances:*

Guarnieri & Secrest, P.L.L., and Michael D. Rossi, *for appellant*.

Barnes & Thornburg, LLP, and Stephen L. Fink, *for appellee*.

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Plaintiff-appellant James Freeman (a.k.a. Abiodun Freeman) brings this appeal challenging the trial court's August 24, 2021 judgment granting summary judgment in favor of defendants-appellees, Turoczy Bonding Co., Inc., et al., in appellant's action to collect purportedly outstanding commissions and "build-

up" funds pursuant to R.C. 3905.91. Appellant argues that genuine issues of material fact existed on both of his claims that precluded summary judgment in defendants-appellees' favor. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} Appellant, a bail bond agent, wrote bonds for defendant-appellee Turoczy Bonding Co., Inc., now known as Eddie Lee Legacy, Inc. (hereinafter "Turoczy") between 2012 and 2014. Appellant's employment was terminated on May 6, 2014.

{¶ 3} On June 13, 2019, in Cuyahoga C.P. No. CV-19-916741, appellant filed a complaint against defendants-appellees (1) Turoczy, (2) Cuffs Off Bail Bonds, Inc., and (3) Lake City Bank, Trustee of the Eddie E. Lee Irrevocable Trust Ltd. (collectively "defendants"). Therein, appellant alleged that defendants owed him $91,118 in commissions that appellant earned on "bail bonds written and premiums thereon collected from 2012 to date" (hereinafter "commission claim").

{¶ 4} Appellant filed an amended complaint on October 2, 2019. Appellant filed a second amended complaint on May 19, 2020. In his second amended complaint, appellant changed the relevant dates regarding his commission claim to April 1, 2011, through May 31, 2014. Appellant further alleged that defendants owed him "the [R.C. 3905.91] 'build-up funds' posted and maintained in [appellant's] individual build-up trust account throughout that same period of time" (hereinafter "BUF claim").

{¶ 5} Defendants filed an answer on July 31, 2019. Furthermore, Turoczy filed a counterclaim against appellant alleging, in part, that appellant owed Turoczy $1,200 plus interest and attorney fees on a promissory note and that appellant owed Turoczy for "policy premiums [appellant] collected but failed to pay to Turoczy, net of [appellant's] commission."

{¶ 6} Defendants filed a motion for summary judgment on November 30, 2020. Therein, defendants argued that Turoczy did not owe any commissions to appellant and that Turoczy was under no obligation to create, and did not create, a BUF account for appellant's benefit. In support of its summary judgment motion, defendants submitted (1) an affidavit of Turoczy's bookkeeper, Konnie Rodenbo,[1] (2) an affidavit of Turoczy's manager, Garrett McClellan, and (3) appellant's responses to defendants' request for admissions and interrogatories. Various documents were attached to the affidavits of Rodenbo and McClellan, including a contract executed between Turoczy and Universal Fire & Casualty Insurance Company (hereinafter "Universal"), and a spreadsheet of all of the activity on bonds written by appellant between 2012 and 2020.

{¶ 7} On December 9, 2020, appellant filed a motion "for order suspending summary judgment practice" until appellant's counsel had an opportunity to depose defendants pursuant to Civ.R. 30(B)(5). The trial court granted appellant's motion

---

[1] The record contains two spellings of Rodenbo's first name: "Konnie" and "Connie."

on January 27, 2021, and held defendants' motion for summary judgment in abeyance.

{¶ 8} On February 17, 2021, appellant filed a brief in opposition to defendants' motion for summary judgment. Therein, appellant argued that genuine issues of material fact existed with respect to both his commission claim and his BUF claim. Appellant alleged that he is owed $25,431.29 in commission for the bond premiums collected between March 2012 and July 2020.

{¶ 9} In support of his brief in opposition, appellant submitted (1) an affidavit executed by appellant on February 16, 2021, (2) an agent's contract executed between City Bonding, Inc. (hereinafter "City") and appellant in 2012, (3) email correspondence between appellant's counsel and defendants' counsel, and (4) the spreadsheet of activity on bonds written by appellant. Appellant also filed a partial transcript of Rodenbo's deposition on the same day as his brief in opposition. Although appellant alleged in his brief in opposition that Turoczy owed him $25,431.29 in commissions, appellant averred in his affidavit that Turoczy owed him "somewhere between $22,308.15 and $29,744.20[.]"

{¶ 10} On March 5, 2021, defendants filed a reply brief in support of its motion for summary judgment. Therein, regarding appellant's commission claim, defendants confirmed that the spreadsheet of appellant's bond activity shows that appellant kept $31,419.75 (approximately 44 percent) of the $71,715.50 that was eventually collected on the bond premiums generated by appellant. Regarding appellant's BUF claim, defendants argued that appellant's BUF claim was based on

the terms of his 2012 contract with City, not any of the named defendants in the present matter.  Defendants argued that the contract between appellant and City is not binding upon them.

{¶ 11} On July 22, 2021, the trial court granted defendants' motion for summary judgment.  The trial court concluded, in relevant part, "the court finds that [appellant] has failed to produce evidence demonstrating entitlement to an amount of commissions from [defendants] named herein beyond that which he originally retained or the proceeds of a build up fund."  Subsequently, on August 24, 2021, the trial court dismissed defendants' counterclaims without prejudice pursuant to Civ.R. 41(A).

{¶ 12} On September 3, 2021, appellant filed the instant appeal.  Appellant assigns one error for review:

> I.  The trial court erred in entering summary judgment in favor of the Defendants below.

## II. Law and Analysis

{¶ 13} In his sole assignment of error, appellant argues that the trial court erred in granting defendants' motion for summary judgment.

## A. Standard of Review

{¶ 14} Summary judgment, governed by Civ.R. 56, provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial.  In order to obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to

judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

{¶ 15} The moving party has the initial responsibility of establishing that it is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

{¶ 16} Once the moving party demonstrates no material issue of fact exists for trial and the party is entitled to judgment, the burden shifts to the nonmoving party to put forth evidence demonstrating the existence of a material issue of fact that would preclude judgment as a matter of law. *Dresher* at *id.* In order to meet this burden, the nonmoving party may not merely rely upon allegations or denials in his or her pleadings, and must set forth specific facts, by affidavit or as otherwise provided in Civ.R. 56(E), demonstrating the existence of a genuine issue of material fact for trial. *See Houston v. Morales*, 8th Dist. Cuyahoga No. 106086, 2018-Ohio-1505, ¶ 7, citing *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197

(1996).  Summary judgment is appropriate if the nonmoving party fails to meet this burden.  *Dresher* at *id.*

### B. Commission Claim

{¶ 17} In the instant matter, the trial court concluded, in relevant part, that appellant "failed to produce evidence demonstrating entitlement to an amount of commissions from [defendants] named herein beyond that which he originally retained."  As noted above, in support of its motion for summary judgment, defendants submitted the affidavits of Rodenbo and McClellan, spreadsheets of all of the activity on bonds written by appellant, and appellant's responses to defendants' interrogatories.

{¶ 18} First, in his affidavit, Rodenbo averred that Freeman's commission rate was 30 percent between November 2012 and appellant's termination in May 2014.  Almost all of Turoczy's agents receive a 30 percent commission rate.  At one point in time, prior to November 2012, appellant worked on a "team" with Elizabeth Large and Donnell Mitchell.  Eddie Lee had a "30%/40%" agreement with Large and Mitchell under which they would receive 30 percent on bond premiums for bonds of $5,000 or less, and they would receive 40 percent premiums for bonds greater than $5,000.  Large and Mitchell had discretion as to how the agents on the "team" that reported to them, including appellant, would be compensated.

{¶ 19} Rodenbo averred that appellant would collect bond premiums, take his commission, and then remit the balance to Turoczy.  She explained,

*Turoczy never owed* [*appellant*] *money for commissions.* The entire system used by Turoczy and other general agents is designed so that the surety bail bond agent, like [appellant], would collect the premium (which included his commission), retain his commission, and remit the balance to Turoczy. *Turoczy owes* [*appellant*] *nothing*; *no commissions* or BUF.

(Emphasis added.) Rodenbo's affidavit, executed November 30, 2020, at ¶ 7. Rodenbo confirmed, "I have reviewed my records repeatedly, and I can state with certainty that Turoczy owes no commissions to [appellant]." *Id.* at ¶ 14.

{¶ 20} Attached to Rodenbo's affidavit was a spreadsheet of all of the activity on bonds written by appellant. The spreadsheet lists the payments reported by appellant, the amount retained by appellant for his commission, and the amount appellant remitted to Turoczy. The record reflects that spreadsheet was prepared by Rodenbo.

{¶ 21} Appellant did not dispute the accuracy of the spreadsheet in the trial court. In fact, appellant submitted Rodenbo's spreadsheet in support of his brief in opposition to defendants' summary judgment motion. In appellant's response to defendants' fifth interrogatory, appellant indicated that he was not aware of any errors in the spreadsheet.

{¶ 22} McClellan averred in his affidavit that prior to November 2012, appellant worked on a team, team "Zero Down," led by Large and Mitchell. Turoczy had an agreement with Large and Mitchell — not a direct agreement with appellant — under which they received 30 percent commission of the premium on bonds of $5,000 or less, and 40 percent commission of the premium on bonds more than

$5,000.  Turoczy paid the team, not appellant, pursuant to this "30%/40%" structure, and appellant received commissions from the team, not Turoczy.

{¶ 23} Appellant began reporting directly to Turoczy on November 16, 2012. At this point, appellant's commission rate was fixed at 30 percent.  McClellan explained, "[i]f things went as they should, [appellant] was to collect the premium payment, deduct his 30% commission, and pay the balance to Turoczy.  Turoczy had no direct agreement with [appellant] until November 16, 2012."  McClellan's affidavit, executed November 23, 2020, at ¶ 5.

{¶ 24} McClellan averred,

> [i]t is important to repeat that the surety bail bond agent[, appellant,] was responsible for collecting the premium, and remitting the premium, net of the agent's commission, to Turoczy.  * * * *Because the agent retained the agent's commission before remitting the bond premium to Turoczy, Turoczy never owed the agent a commission.*

(Emphasis added.)  *Id.* at ¶ 7.

{¶ 25} McClellan submitted the spreadsheets of activity on bonds written by appellant with his affidavit.  He averred,

> [appellant] collected premiums, took his commission (or sometimes more than his commission), and then remitted the balance to Turoczy. Turoczy never owed [appellant] money for commissions.  The entire system used by Turoczy and other general agents is designed so that the surety bail bond agent, like [appellant], would collect the premium, which included his commission, retain his commission, and remit the balance to Turoczy.  Turoczy owes [appellant] nothing; no commissions or BUF.

*Id.* at ¶ 8.

{¶ 26} The evidence submitted by defendants demonstrated that Turoczy did not owe any commissions to appellant. The burden then shifted to appellant to show the existence of a genuine issue of material fact on his commission claim.

{¶ 27} In this appeal, appellant argues that a genuine issue of material fact existed on his commission claim based on his affidavit and Turoczy's spreadsheet of appellant's bond activity: "[appellant] demonstrated that he earned commissions on premiums that were financed, paid and collected by Turoczy over time; that Turoczy accounted to [appellant] for none of those commissions; and that such [commissions] were calculated into the $22,308.15-$29,744.20 range." Appellant's brief at 7.

{¶ 28} Appellant submitted an affidavit and the spreadsheet of his bond activity in support of his brief in opposition. In his affidavit, appellant averred, in relevant part,

* * *

8. According to Columns 4 and 5 of the spreadsheet, [appellant] solicited and wrote the sum of $2,340,780 in bonds, thereby generating $234,000 in bond premium, throughout [the period of time between March 17, 2012 and July 31, 2020.][2]

9. According to Column 8 of the spreadsheet, the sum of $137,869.50 of the $234,000.00 in gross bond premium was initially <u>uncollected</u>.

10. That "uncollected" sum is also known as [Accounts Receivable].

11. According to Column 21 of the spreadsheet, the sum of $63,509.00 remained uncollected on [July 31, 2020].

---

[2] Rodenbo's spreadsheet was dated July 31, 2020.

12. The difference between that amount remaining uncollected on [July 31, 2020] ($63,509.00) and the initial amount uncollected ($137,869.50) is $74,360.50, which is the amount of bond premium collected by Turoczy from [March 17, 2012 through July 31, 2020].

13. [Appellant's] commission on the $74,360.50 in collected bond premium was either 30% or 40% as stated in Column 11 of the spreadsheet, or somewhere between $22,308.15 and $29,744.20, no part of which has ever been paid to [appellant] to date despite his demand therefor[e].

{¶ 29} After reviewing the record, we find that appellant failed to meet his burden of demonstrating the existence of a genuine issue of material fact that precluded summary judgment in defendants' favor on his commission claim. Appellant's commission claim is based entirely on appellant's "cherry-picking" of numbers from the spreadsheet to support his commission claim and his unsupported interpretation of the numbers in the spreadsheet.

{¶ 30} Turoczy does not dispute that (1) appellant generated $234,000 in bond premiums and (2) $137,869.50 of the bond premiums generated by appellant were initially uncollected. The spreadsheet reflects that Turoczy collected $71,715.50 of the uncollected bond premium, not $74,360.50 as appellant averred in his affidavit. Furthermore, the spreadsheet demonstrates that appellant retained $31,419.75 of the $71,715.50 collected by Turoczy. Accordingly, the spreadsheet indicates that appellant retained approximately 44 percent of the $71,715.50 collected by Turoczy.

{¶ 31} As noted above, when appellant reported directly to Turoczy, his commission was fixed at 30 percent. When appellant worked on team "Zero Down" he was compensated by the team leaders, with whom Turoczy had a "30%/40%"

commission arrangement. Regardless of which commission percentage is applied, the spreadsheet demonstrates that appellant retained more than he was entitled on the amount that was collected by Turoczy.

{¶ 32} Rodenbo, Turoczy's bookkeeper and records keeper, oversaw accounts receivable. She prepared the spreadsheet of all activity on bonds written by appellant, based upon which appellant claims Turoczy owes him between $22,308.15 and $29,744.20 in commission. Rodenbo unequivocally testified that Turoczy does not owe appellant any commission. Appellant did not dispute the accuracy of Rodenbo's spreadsheet.

{¶ 33} Finally, appellant did not present any evidence regarding the manner in which appellant collected his premiums. Appellant did not present any evidence contradicting Rodenbo's and McClellan's testimony that appellant collected the bond premium, deducted his commission, and then remitted the remaining balance to Turoczy. The evidence presented by defendants indicates that it was appellant's responsibility to collect his commission, not Turoczy's responsibility to pay the commission to appellant.

{¶ 34} For all of the foregoing reasons, appellant's commission claim fails as a matter of law, and the trial court properly granted summary judgment in defendants' favor in this respect.

## C. BUF Claim

{¶ 35} In the instant matter, the trial court concluded, in relevant part, that appellant "failed to produce evidence demonstrating entitlement to * * * the proceeds of a build up fund."

{¶ 36} As noted above, defendants submitted the affidavits of Rodenbo and McClellan in support of its motion for summary judgment.

{¶ 37} Rodenbo averred in her affidavit that the original bail bond contract, executed on April 23, 2007, between Turoczy and Universal, was amended in May 2012 to provide for the establishment of an indemnity or build-up fund. The funds deposited into the fund "are to be held until all liability on bonds written by surety bail bond agents reporting to Turoczy are fully satisfied." *Id.* at ¶ 5. Rodenbo asserted that there was never an agreement or arrangement between Universal, Turoczy, and appellant that 40 percent of bond premiums would be deposited into a BUF account and then the funds in the account would be paid to appellant when the liability on a bond was terminated. When the liability on all bonds has been terminated, the money held in the fund is released to Turoczy — not to appellant. Rodenbo averred in her affidavit that "Turoczy has no liability to [appellant] for money held in a BUF account, indemnity fund, or for any other reason." *Id.* at ¶ 6.

{¶ 38} During her January 20, 2020 deposition, which appellant submitted in support of his brief in opposition to defendants' summary judgment motion, Rodenbo confirmed that Turoczy's agents are "not entitled to any buildup fund."

(Tr. 51.) Rodenbo testified that she maintains one BUF account and that the BUF account "has nothing to do with the agent." (Tr. 64-65.)

{¶ 39} McClellan averred in his affidavit that Turoczy did not owe money from a BUF account to appellant. He asserted that neither Turoczy nor Universal established a BUF account for appellant's benefit. McClellan explained that appellant was a non-liable surety bail bond agent, and as a result, a BUF account was never established for appellant. McClellan asserted that no Ohio insurer, such as Universal, or managing general agency, such as Turoczy, establishes a BUF account for the benefit of a non-liable surety bail bond agent. Finally, McClellan averred that appellant never asked anything about a BUF account during the time he wrote bonds for Turoczy.

{¶ 40} The evidence submitted by defendants demonstrated that a BUF account was not established on appellant's behalf or for appellant's benefit and that Turoczy did not owe any money from a BUF account to appellant. The burden then shifted to appellant to show the existence of a genuine issue of material fact on his BUF claim.

{¶ 41} In opposing defendants' motion for summary judgment, appellant averred in his affidavit that between 2012 and 2014, he wrote bonds pursuant to a contract he executed in January 2012 with City. Based on the terms of his contract with City, appellant asserted that he "understood and believed that [appellant's] build-up funds were being held in escrow by [Universal]." *Id.* at ¶ 5. Appellant averred that under the City contract, the "build-up funds" were to have been held in

escrow for his benefit pursuant to [R.C.] 3905.91, in an amount equal to 4% of the bonds he wrote or 40% of the bond premiums he thereby generated." *Id.* at ¶ 3.

{¶ 42} The 2012 contract was executed between City and appellant. The contract was signed by Donnell Mitchell and "Large Bonds/Zero Down" was identified on the signature page. Universal was not a party to, nor referenced in, the 2012 contract.

{¶ 43} Universal was, however, identified in the commission schedule that was attached to the 2012 City contract. This commission schedule provided, in relevant part,

> Build up funds will be held in escrow as required by [R.C.] 3905.91 through the IC OF OHIO TRUST bank account unless otherwise agreed upon to be held by [Universal.]
>
> [Universal] will obtain 1% of premium per bond. Spring Break LLC will retain 1% per bond for the use of all trademarks and related tradenames[.] Under [R.C.] 3905.91 all agents will retain 4% on all bonds solicited to be held in agent "BUF" acct. On report day all signed agents will receive 3% on all bonds upfront with 1 % to [manager] report agent[.] 50% Liability will be assessed to agent and 50% Liability will be assessed to Spring Break LLC.

{¶ 44} Appellant also relied on R.C. 3905.91 in opposing defendants' motion for summary judgment with respect to his BUF claim. R.C. 3905.91, which is referenced in the commission schedule attached to the 2012 City contract, provides,

> (A) All build-up funds posted by a surety bail bond agent or managing general agent, either with an insurer or managing general agent representing an insurer, *shall be maintained in an individual build-up trust account for the surety bail bond agent by the insurer or the managing general agent.* * * *
>
> (B) Build-up funds shall not exceed forty per cent of the premium as established by the surety bail bond agent's contract agreement with the

insurer or managing general agent. Build-up funds received shall be immediately deposited to the build-up trust account. Interest earned on build-up trust accounts *shall accrue to the surety bail bond agent.*

(C) Build-up funds are due upon termination of the surety bail bond agent's contract and discharge of liabilities on the bonds for which the build-up funds were posted. The insurer or managing general agent *shall pay the funds to the surety bail bond agent not later than six months after the funds are due.*

(Emphasis added.)

{¶ 45} After reviewing the record, we find that appellant's BUF claim is supported by the language of the 2012 City contract and R.C. 3905.91. However, appellant's BUF claim is based entirely on the terms of the City contract. City is not a party in this civil action.

{¶ 46} The terms of appellant's contract with City, which required build-up funds to be held in escrow pursuant to R.C. 3905.91, are not binding upon the named defendants in this matter. Appellant cannot hold Turoczy to City's contractual obligations.

{¶ 47} Rodenbo testified in her affidavit that between November 2012 and May 2014, appellant never asked about the establishment of a BUF account: "[appellant] never asked if a BUF account had been established, or the amount being deposited into the BUF account. [Appellant] never mentioned a BUF account during the time he wrote bonds for Turoczy." *Id.* at ¶ 9. McClellan also averred in his affidavit that appellant never asked about the establishment of a BUF account or made any inquiry pertaining to a BUF account during the time that appellant wrote bonds for Turoczy as a non-liable surety bail bond agent.

**{¶ 48}** Both Rodenbo and McClellan averred that BUF accounts or indemnity funds are not established for the benefit of a non-liable surety bail bond agent, such as appellant. Both Rodenbo and McClellan confirmed that Turoczy does not owe appellant any funds from a BUF account.

**{¶ 49}** Attached to Rodenbo's affidavit was an April 23, 2007 "agent bail bond contract" executed between Universal and Turoczy. The original contract did not require Turoczy to deliver to Universal a percentage of the total liability for each bond written by Turoczy for purposes of establishing an indemnity fund or build-up fund.

**{¶ 50}** A May 2012 addendum to the contract between Universal and Turoczy was also attached to Rodenbo's affidavit. The addendum required Turoczy to deliver to Universal a cash sum equal to 1 percent of the total liability for each bond written by Turoczy. The deposits of these sums were to be known as the indemnity fund or build-up fund.

**{¶ 51}** The original contract between Turoczy and Universal provided, in relevant part,[3] "[u]pon termination of this Contract, only after every bond written by [Turoczy] is exonerated or otherwise determined satisfied and all other debts of [Turoczy] to [Universal] are paid, shall the balance of the Indemnity Fund(s) *be delivered to* [*Turoczy*]." (Emphasis added.) The contract further provided,[4]

---

[3] Section 19(g) of agent bail bond contract between Universal and Turoczy, governing "indemnity fund/buildup fund/BUF."
[4] Section 19(k).

All gains and losses derived from the investment of the Indemnity Fund(s) *shall belong to* [*Turoczy*], provided, however, that this shall not limit [Universal's] rights to deal with Indemnity Fund(s) as otherwise described in this Contract. *Indemnity Fund(s) shall benefit and burden* [*Turoczy*] *and not* [*Universal*] except to the extent that gains or losses shall increase or decrease [Universal] security. [Turoczy] shall be solely responsible for any taxes on income and losses derived from Indemnity Fund(s). Such taxes shall not be paid out of Indemnity Fund(s).

(Emphasis added.)

{¶ 52} After reviewing the record, we find that appellant failed to meet his burden of demonstrating the existence of a genuine issue of material fact that precluded summary judgment in defendants' favor on his BUF claim. Turoczy was bound by the terms of the 2007 contract and 2012 addendum thereto with Universal, not the terms of the 2012 contract between appellant and City. The evidence submitted by defendants demonstrated that a BUF was established for the benefit of Turoczy, not the benefit of appellant. Furthermore, when the money in the BUF account was released, it was to be delivered to Turoczy, not appellant.

{¶ 53} For all of the foregoing reasons, appellant's BUF claim fails as a matter of law, and the trial court properly granted summary judgment in defendants' favor in this respect.

### III. Conclusion

{¶ 54} After thoroughly reviewing the record, we affirm the trial court's judgment. Appellant failed to demonstrate the existence of a genuine issue of material fact that precluded judgment as a matter of law in defendants' favor on

either his commission or BUF claims.  Accordingly, the trial court properly granted defendants' motion for summary judgment in its entirety.

{¶ 55} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
LISA B. FORBES, J., CONCUR